**William L. KING and Darlene E. King, Petitioners–Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

**No. 87–7418.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted August 12, 1988.

Decided Sept. 21, 1988.

Gilbert S. Rothenberg, Dept. of Justice, Washington, D.C., for respondent-appellant.

Charles M. Meadows, Davis, Meadows, Owens, Collier & Zackry, Dallas, Tex., for petitioners-appellees.

Before WRIGHT and POOLE, Circuit Judges, and HUPP, District Judge.[*]

POOLE, Circuit Judge:

■ The Commissioner appeals from the Tax Court's order dismissing the Kings' petition for lack of jurisdiction. The Tax Court held that the Commissioner failed to exercise reasonable diligence to ascertain the Kings' last known address and that therefore the notice of deficiency mailed to the Kings' former address was invalid. We have jurisdiction pursuant to 26 U.S.C. § 7482 (1982 & Supp. IV 1986)[1] and we affirm.

[*] The Honorable Harry L. Hupp, United States District Judge for the Central District of California, sitting by designation.

## FACTS AND PROCEEDINGS BELOW

The essential facts are undisputed and are set forth in the Tax Court's opinion. *See King v. Commissioner*, 88 T.C. 1042, 1043–46 (1987). The following is a brief summary.

Taxpayers filed Federal income tax returns for 1978 and 1979 with the Internal Revenue Service Center in Austin, Texas. At that time, taxpayers resided at 7140 Mossvine Drive in Dallas. When the Dallas District Director's Office selected taxpayers' 1978 and 1979 returns for review, taxpayers filed two powers of attorney with the Dallas office listing the Mossvine address.

In October 1980, taxpayers moved to 17223 Club Hill Drive in Dallas. However, taxpayers subsequently filed with the Dallas office an additional power of attorney and a Form 4549 erroneously listing their Mossvine address. Taxpayers first used their Club Hill address on correspondence with the IRS in April 1981, when they requested an extension of time to file their 1980 return. On June 15, 1981, taxpayers filed their 1980 return using their Club Hill address. Both the request for extension and the return were filed with the Austin Service Center.

On August 17, 1981, the Dallas office sent taxpayers a 30–day letter at the Mossvine address, which was forwarded to the Club Hill address. On September 17, 1981, taxpayers' attorney (Billings) responded by filing a verified protest letter which erroneously listed the Mossvine address. Several weeks later, Mr. King's secretary called Billings to inform him that the Mossvine address was no longer correct, but Billings did not inform the IRS of the change.

In December 1981, the Austin Service Center sent two Statements of Adjustment covering the 1978 and 1979 tax years to taxpayers at the Club Hill address.

On February 19, 1982, the Dallas office mailed a notice of deficiency to the Moss-

1. Although the operative facts occurred in Texas, venue is proper in this court because the taxpayers resided in Arizona at the time their petition was filed. *See* 26 U.S.C. § 7482(b)(1).

vine address, with copies to taxpayers' accountant and attorney.[2] The notice was returned as undeliverable in March, 1982. When the notice was returned, appeals officer Dwyer reviewed the administrative file to determine if the notice had been sent to the correct address, but he concluded that it had been and took no further action. At no time did Dwyer request a computer search of the records of the Austin Service Center.

In July 1982, the IRS assessed the deficiency and began collection procedures. Taxpayers sought to enjoin the collection by filing suit in federal district court. That suit was eventually dismissed without prejudice, and taxpayers filed the instant petition in the Tax Court on December 4, 1984. Both parties moved for dismissal. On April 23, 1987, the Tax Court issued an opinion concluding that "the notice of deficiency was not sent to [taxpayers'] last known address and it is therefore invalid." *King v. Commissioner*, 88 T.C. at 1050. The Commissioner's motions for reconsideration and to vacate the order of dismissal were denied on June 2, 1987, and the Commissioner brought this appeal.

### ISSUE

Did the Tax Court err in finding that the Commissioner did not mail the notice of deficiency to the taxpayers' last known address?

### STANDARD OF REVIEW

We consider first the question of what standard of review we should apply. In *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.1982), we stated: "[i]t is a question of fact as to what knowledge the IRS acquires concerning the taxpayer's address." Findings of fact are reviewed under the clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Here, however, neither party disputes the historical facts as found by the

Tax Court; rather, the dispute centers on the Tax Court's ultimate conclusion that the Commissioner did not mail the notice to the taxpayers' "last known address."

The Commissioner argues that *de novo* review is appropriate, citing *Scar v. Commissioner*, 814 F.2d 1363 (9th Cir.1987), in which we stated: "In order to decide whether the Tax Court had jurisdiction we review *de novo* the Tax Court's interpretation of section 6212(a)." 814 F.2d at 1366. However, the issue before the court in *Scar* was not a determination of the taxpayers' "last known address;" rather, the question was:

> whether a form letter that asserts that a deficiency has been determined, which letter and its attachments make it patently obvious that no determination has in fact been made, satisfies the statutory mandate.

*Scar*, 814 F.2d at 1367. The *Scar* court treated this issue as one of pure statutory interpretation, since the legal standard had not been established. Here, by contrast, both the historical facts and the legal standard ("reasonable diligence") are established, and the only question is the proper application of the standard to these facts. Thus, "last known address" is a mixed question, and the standard of review should be determined under the analysis set forth in *McConney*.

Under *McConney*, "the key to the resolution of this question is the nature of the inquiry that is required." 728 F.2d at 1202. The operative distinction is whether the inquiry is "essentially factual," i.e., founded on the fact-finder's "experience with the mainsprings of human conduct," or whether it requires "judgment about the values that animate legal principles." *Id.*

We find further guidance in *McConney*'s discussion of two tax cases: *Helvering v. Tex–Penn Oil Co.*, 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755 (1937), and *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In *Tex–*

---

**2.** Billings testified that he received a copy of the notice of deficiency, but that he took no action and did not contact taxpayers because they had since retained another attorney. Taxpayers' accountant, Kreatschmann, testified that he did not receive the copy mailed to him.

*Penn,* the Supreme Court reviewed *de novo* the question whether a transaction fell within the non-recognition of gains provisions of the Code. This court commented that *Tex–Penn* "required an analysis of the intricacies of the corporate reorganization provision of the Internal Revenue Code and the legislative purpose in exempting certain gains from immediate taxation." *McConney,* 728 F.2d at 1203. In *Duberstein,* the Supreme Court held that whether a donation was a "gift" was subject to clearly erroneous review. 363 U.S. at 289–91, 80 S.Ct. at 1198–1200. The Court explained:

> The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that the primary weight in this area must be given to the conclusions of the trier of fact.

363 U.S. at 289, 80 S.Ct. at 1198–99, *quoted in McConney,* 728 F.2d at 1203 n. 10.

 Here, the "last known address" inquiry requires an examination of the totality of the circumstances and a balancing of many relevant factual elements, factors which indicate that the inquiry is "essentially factual." We therefore conclude that clearly erroneous review is appropriate.[3] Our conclusion is in accord with the two other circuits which have specifically addressed this issue. *See McPartlin v. Commissioner,* 653 F.2d 1185, 1189 (7th Cir. 1981); *Johnson v. Commissioner,* 611 F.2d 1015, 1019 (5th Cir.1980).

## DISCUSSION

 The IRS must give notice to the taxpayer before it may assess or collect any deficiency. I.R.C. § 6213(a). A notice of deficiency is valid, even if it is not received by the taxpayer, if it is mailed to the taxpayer's "last known address." I.R.C. § 6212(b)(1); *see Wallin v. Commissioner,* 744 F.2d 674, 676 (9th Cir.1984); *United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984).[4]

The Tax Court has established, and this court has adopted, the following frequently cited rule:

> [W]hile the Commissioner is bound to exercise reasonable diligence in. ascertaining the taxpayer's correct address, he is entitled to treat the address appearing on a taxpayer's return as the last known in the absence of clear and concise notification from the taxpayer directing the Commissioner to use a different address.

*Alta Sierra Vista, Inc. v. Commissioner,* 62 T.C. 367, 374 (1974) (citations omitted), *aff'd mem.* 538 F.2d 334 (9th Cir.1976); *see Wallin,* 744 F.2d at 676.

This circuit has consistently held that "a subsequently filed tax return with a new address does give the IRS notice" of a change of address. *Wallin,* 744 F.2d at 676; *see also Zolla,* 724 F.2d at 810 ("a taxpayer's last known address is that on his most recent return"); *accord Cyclone Drilling, Inc. v. Kelley,* 769 F.2d 662, 664 (10th Cir.1985) ("we follow the Ninth Circuit in our view that a taxpayer's subsequent return bearing a new address provides the IRS with 'clear and concise' notice.").[5] For example, in *Cool Fuel, Inc. v.*

---

**3.** *Wallin v. Commissioner,* 744 F.2d 674 (9th Cir.1984), is not to the contrary. In *Wallin,* we simply reiterated the familiar proposition that questions of law are reviewed *de novo.* 744 F.2d at 676. *De novo* review was appropriate in *Wallin* because that case came to us on appeal from a grant of summary judgment. *Id.*

**4.** An improperly addressed notice may also be valid if it is actually received by the taxpayer in sufficient time to make a timely petition, or if the taxpayer otherwise learns of the notice and acknowledges it by making a timely petition. *See Mulvania v. Commissioner,* 769 F.2d 1376,

1378–81 (9th Cir.1985). The Commissioner does not contend that this is the case here.

**5.** We note that the Tax Court and the majority of the courts of appeals have declined to adopt a bright-line rule, although these courts nonetheless emphasize that a subsequent return is an important factor in determining a taxpayer's last known address. *See, e.g., McPartlin,* 653 F.2d at 1190 (7th Cir.); *Crum v. Commissioner,* 635 F.2d 895, 899 (D.C.Cir.1980); *Pyo v. Commissioner,* 83 T.C. 626, 634 (1984) and cases cited therein.

*Connett*, the taxpayer had moved more than a year before the notice of deficiency was mailed, and had used its new address on its quarterly employment tax returns. We held that "[t]hese subsequently filed tax returns provided the IRS with notice of Cool Fuel's move." 685 F.2d at 312. The IRS' use of preprinted address labels with the new address evidenced the IRS' awareness of the move. *Id.*[6] We also held that the knowledge of the IRS Service Center should be imputed to the audit division, saying:

> The application of ordinary business principles to the tax business of the government would seem to require the Commissioner to avail himself of the facilities of his business organization in the performance of his duty to mail the notice of deficiency. [*quoting Welch v. Schweitzer*, 106 F.2d 885, 887 (9th Cir.1939) ]

*Id.* at 312–13.

■ Here, it is likewise clear that the IRS had knowledge of the taxpayers' new address. The taxpayers had filed a subsequent return bearing their new address, and the IRS had sent collection notices regarding the tax years at issue to that address. *Cool Fuel* holds that this is sufficient to impute knowledge of the new address to the audit division. *Id.*

*Zolla* is not to the contrary. In *Zolla*, it was undisputed that the address to which the notice of deficiency was mailed was the address shown on the taxpayer's most recent return. The taxpayer argued, however, that the collection division had discovered his new address while attempting to collect an unrelated tax liability. We rejected this argument, saying:

> We adopt the view of the Tax Court that such information gained by a collector should not necessarily be imputed to the audit agents who mailed the notices of

deficiency.... If we required agents mailing notices of deficiency to take into account address information acquired by agents in different divisions in the course of unrelated investigations, the IRS could ensure that notices were validly addressed only be systematically recording in a central file all address information acquired in any fashion. We decline to require the IRS to do that.

724 F.2d at 810–11. *Zolla* holds that knowledge acquired in unrelated investigations is not *necessarily* imputed from one division to another. Tax returns, however, are a different matter; since *Welch v. Schweitzer* we have consistently held that address information on subsequent returns *is* imputed to the IRS as a whole.[7] *Zolla* confirms this by defining the "last known address" as that on the taxpayer's *"most recent* return." *Id.* at 810 (emphasis added).

■ We recognized in *Zolla* that "the IRS must have clear guidance as to what information it must examine in determining a taxpayer's last known address." 724 F.2d at 811. Our adherence to this circuit's bright-line rule is intended to provide such guidance. By establishing a presumption that the taxpayer's "last known address" is the address on his/her most recent return, we provide a clear starting point for the IRS' determination. A notice of deficiency mailed to that address will be sufficient, unless the taxpayer subsequently communicates "clear and concise" notice of a change of address.

■ The Commissioner, however, argues that the protest letter filed by Billings, which certified that the Mossvine address was correct, constituted clear and concise notice and that the IRS was entitled to rely on it. We think this argument misses the point, since Officer Dwyer never checked to see if the address matched that

---

**6.** *Compare Tadros v. Commissioner,* 763 F.2d 89, 91–92 (2d Cir.1985) (subsequent return not received by the IRS until after the notice of deficiency was mailed).

**7.** This is especially true today, when tax return information is systematically recorded on computer files and a computer search may be performed with ease. *See Wallin* at 677 & n. 4.

The Commissioner disputes that this was true during the time involved here; however, since the notice of deficiency here was prepared in December 1981 and mailed in February 1982, a four-to-six-week delay would still have resulted in timely notice before the statute of limitations expired in April 1982. *See Crum,* 635 F.2d at 899–900.

on the taxpayer's most recent return. Had he done so, he would have discovered the discrepancy and further inquiry could have been made. In any case, we believe that the protest letter did not constitute "clear and concise" notice as a matter of law. Correspondence bearing an address different from that on the most recent return does not, by itself, constitute clear and concise notice. *See, e.g., Tadros v. Commissioner,* 763 F.2d at 92 (letter from taxpayer did not indicate that taxpayer had permanently moved or that address on letterhead was his new place of residence, nor did it mention the old address or indicate that it was no longer to be used); *Alta Sierra Vista,* 62 T.C. at 375 (new address on letterhead insufficient to notify IRS "that such address had *replaced* [taxpayer's] former address and that the former address was no longer to be used."); *cf. Pyo v. Commissioner,* 83 T.C. at 637–38 (filing of Form 872 bearing old address did not supplant address on most recent return). In order to supplant the address on his/her most recent return, the taxpayer must clearly indicate that the former address is no longer to be used. *Tadros,* 763 F.2d at 92. The protest letter filed by Billings did not mention the Club Hill address, nor did it indicate that it was not to be used. We therefore hold that the Club Hill Drive address constituted taxpayers' "last known address" and that the IRS erred in failing to send the notice of deficiency to this address.

The Tax Court followed a somewhat different analysis. It relied on the following language from *Cool Fuel,* which was appended to our discussion of *Welch v. Schweitzer:*

> This is particularly so where, as here, the return of the notice of deficiency as undeliverable put the IRS on notice that Cool Fuel had moved. In light of this, the audit division had a duty to exercise reasonable diligence in ascertaining the correct address. Had the audit division done so, it would have realized that the Paramount address was the last known address and could have effectuated notice. Failure of the IRS to do this is a violation of the statutory notice procedure.

685 F.2d at 313 (citation omitted). The Tax Court read this language as imposing a duty on the IRS to reexamine its records after the original notice was returned as undeliverable. *See* 88 T.C. at 1049. Although this passage from *Cool Fuel* is admittedly somewhat ambiguous, we reject the Tax Court's interpretation as clearly erroneous in light of the governing statute. Under I.R.C. § 6212(b), validity of the notice turns on whether the IRS used the last known address when the notice was *mailed.* Nothing in the statute suggests that the IRS is obligated to take additional steps to effectuate delivery if the notice is returned; indeed, a notice mailed to the last known address is sufficient even if it is never received. *Wallin,* 744 F.2d at 676. Consequently, we do not believe that *Cool Fuel* imposes a duty of reasonable diligence beyond the time that the notice is mailed. The court in *Cool Fuel* had already held that the subsequent tax returns were themselves sufficient to provide the IRS with notice, and our previous holding in *Welch v. Schweitzer* was sufficient to impute that knowledge to the audit division.[8]

However, although we believe the Tax Court erred in its analysis of *Cool Fuel,* we may nonetheless affirm on any basis clearly supported by the record. *Zolla,* 724 F.2d at 810 n. 3; *Shipley v. United States,* 608 F.2d 770, 773–74 (9th Cir.1979). As discussed above, it is clear under our prior precedents that the IRS failed to send the notice of deficiency to the taxpayers' last known address. We therefore affirm the judgment entered by the Tax Court in favor of the taxpayers.

AFFIRMED.

---

**8.** Our reading of *Cool Fuel* is consistent with our subsequent decision in *Wallin.* There, we noted that four letters sent to the taxpayer had been returned as undeliverable, putting the IRS on notice that the taxpayer had moved. 744 F.2d at 675 & n. 2, 676 (citing *Cool Fuel*). In *Wallin,* however, the four letters were returned *before* the IRS mailed the notice of deficiency. In such a situation, the IRS could reasonably be expected to conduct a further inquiry.